**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

SHARON KIM BEAZLEY, ET AL.          CIVIL ACTION NO. 16-1188

VERSUS                                  JUDGE S. MAURICE HICKS, JR.

METROPOLITAN LIFE INSURANCE       MAGISTRATE JUDGE HANNA
COMPANY AND SCHLUMBERGER
TECHNOLOGY CORPORATION

## MEMORANDUM RULING

The above captioned matter concerns a claim for benefits under a life insurance policy governed by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and is before the Court for a decision on the briefs and stipulated administrative record. For the reasons assigned herein, all claims are hereby **DISMISSED WITH PREJUDICE**.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Sharon Kim Beazley ("Mrs. Beazley"), individually and on behalf of the minor child LMB, Jordon Kale Beazley, and Jake Lynfield Beazley filed the instant lawsuit against Defendants, Metropolitan Life Insurance Company ("MetLife") and Schlumberger Technology Corporation ("STC"), alleging that Defendants improperly denied a life insurance claim for benefits. See Record Document 1. Plaintiffs are the wife, sons, and granddaughter of Greg Lynfield Beazley ("Mr. Beazley") who died on June 12, 2014. See id. at ¶¶ 3-6.

Mr. Beazley is a former employee of STC. See id. at ¶ 7. STC established the Schlumberger Group Life, Accidental Death & Dismemberment, and Business Travel Accident Plan ("the Plan"), an employee welfare plan as defined by ERISA, to provide

basic and supplemental life insurance benefits to its eligible employees.  <u>See</u> Record Document 7 at ¶ 8.  MetLife issued STC a group insurance policy to fund benefits payable under the Plan.  <u>See id.</u>  MetLife also served as the claims administrator for the Plan.  <u>See id.</u> at ¶ 9.  Mr. Beazley purchased group life insurance through the Plan.  <u>See</u> Record Document 1 at ¶¶ 8-9.  Plaintiffs allege that Mr. Beazley's life was insured in excess of $1,034,000.00.  <u>See id.</u> at ¶ 8.

Mr. Beazley's employment with STC ended on May 6, 2014 as part of a reduction in workforce.  <u>See id.</u> at ¶ 10.  Plaintiffs assert that after his separation from STC, Mr. Beazley was eligible to port or convert his existing life insurance coverage.  <u>See id.</u> at ¶ 11.  Plaintiffs allege that Mr. Beazley's application period to elect to continue his coverage was extended by 45 days because of MetLife's untimely notice of his options under the policy.  <u>See id.</u> at ¶¶ 12-13.  On June 12, 2014, Mr. Beazley died before electing to port or convert his coverage.  <u>See id.</u> at ¶¶ 14-15.  Mrs. Beazley filed a claim with MetLife, which was denied.  <u>See id.</u> at ¶ 17.  Mrs. Beazley appealed the denial of her claim, which was also denied. <u>See id.</u> at ¶ 18.

Plaintiffs allege that MetLife and STC are liable for (1) failing to timely provide them with notice of their rights under Mr. Beazley's insurance policies or plans; (2) failing to pay benefits owed under the policies or plans; and (3) failing to act as a competent and prudent plan administrator.  <u>See id.</u> at ¶¶ 19-20.  Plaintiffs contend that they are entitled to all amounts due under the policy, judicial interest, attorney's fees, court costs, and any applicable penalties under ERISA, 29 U.S.C. § 1001 et seq.  <u>See id.</u> at ¶ 21.

Defendants state that per the terms of the Plan, Mr. Beazley's coverage ended with his separation from employment with STC on May 6, 2014. See Record Document 7 at ¶¶ 7-9. Defendants claim that Mr. Beazley was provided notice of his portability and conversion rights under the plan, but he did not port or convert his coverage prior to his death on June 12, 2014. See id. at ¶¶ 12, 15, 16. Defendants maintain that per the terms of the Plan, Mr. Beazley's death prohibits the retroactive exercise of the portability and conversion privileges afforded by the Plan. See id. at ¶ 15. Defendants deny that they acted arbitrarily and capriciously in the determination of Mrs. Beazley's claim. See id. at ¶ 19.

This Court issued an ERISA Case Order setting forth briefing deadlines applicable to this matter. See Record Document 9. In response, the parties filed statements stipulating that the Plan at issue is governed by ERISA, and ERISA preempts all state law claims as they may relate to the Plan. See Record Document 10; Record Document 14. The Defendants provided a full and complete copy of the Plan and the administrative record concerning Mrs. Beazley's claim for benefits and subsequent appeal. See Record Document 12, Ex-1 Your Benefit Plan – Schlumberger Technology Corporation (herein "SPD")[1], Ex-2 Administrative Appeal Record ("AAR"). The parties stipulated that the administrative record is complete. See Record Document 14. The matter was placed before the Court for a decision on the briefs and stipulated administrative record.

---

[1] Defendants numbered the pages of the Plan as SPD 001 – SPD 087. Although SPD normally refers to a Summary Plan Description, it appears that MetLife attached the complete Plan document.

Thereafter, Defendants filed a Supplemental Answer and Cross Claim for Interpleader. See Record Document 21. As Cross-claimants in Interpleader, MetLife and STC named Jared Beazley as Defendant in Interpleader upon their belief that Jared Beazley is another biological child of Mr. Beazley who was not made a party of the original complaint. See id. at ¶ 5. Mr. Beazley designated Mrs. Beazley, Jake Beazley, Jordan Beazley, and LMB as primary beneficiaries under his basic life insurance policy. See id. at ¶¶ 8-10. However, Mr. Beazley did not name a beneficiary for his supplemental policy. See id. As such, any payment under the supplemental policy would follow the Plan's provision concerning the death of a participant without a designated beneficiary. See id. at ¶ 11. MetLife and STC contend that because the position of Plaintiffs and Jared Beazley are adverse, a ruling in favor of the Plaintiffs could potentially expose them to multiple liabilities. See id. at ¶¶ 13-14. In response, Jared Beazley asserts a claim that as a natural born son of Mr. Beazley he is also a proper beneficiary. See Record Document 24 at ¶¶ 16-17. Jared Beazley agreed to all stipulations in this case. See Record Document 27.

All parties have submitted trial briefs in support of their respective positions based on the stipulated administrative record. See Record Document 28; Record Document 31; Record Document 34. The parties also submitted supplemental briefs at the request of the Court. See Record Document 41; Record Document 42; Record Document 45; Record Document 47; Record Document 48. Accordingly, this matter is ripe for a determination.

## LAW AND ANALYSIS

## I.     Standard of Review Under ERISA

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." Schadler v. Anthem Life Ins. Co., 147 F.3d 388, 393 (5th Cir. 1998) (citation omitted). ERISA authorizes a civil action by a plan participant or beneficiary "to recover benefits due to him under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The standard of review in an ERISA case is governed by the language of the plan at issue. Generally, a denial of benefits under an ERISA plan is reviewed de novo. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956 (1989). However, courts must apply an abuse of discretion standard when "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115. In this case, the policy specifically and expressly conferred discretionary authority upon MetLife. See SPD 084.[2] Therefore, the abuse of discretion standard applies. Additionally, regardless of the administrator's ultimate authority to determine benefit eligibility, factual determinations made by the administrator during the course of a benefits review should be reviewed for an abuse of discretion. See Chacko v. Sabre Inc., 473 F.3d 604, 610 (5th Cir. 2006); McCall v. Burlington Northern/Santa Fe Co., 237 F.3d 506, 512 (5th Cir. 2000).

---

[2] MetLife's discretionary authority is set forth in the Plan as follows:

**Discretionary Authority of Plan Administrator and Other Plan Fiduciaries**
In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary or capricious.

An "administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." Holland v. Int'l Paper Co. Ret. Plan, 576 F.3d 240, 246 (5th Cir. 2009). "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." Schexnayder v. Hartford Life & Acc. Ins. Co., 600 F.3d 465, 468 (5th Cir. 2010). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Anderson v. Cytec Indus., Inc., 619 F.3d 505, 512 (5th Cir. 2010). The administrator's decision is arbitrary "only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." Holland, 576 F.3d at 246-247. Under the abuse of discretion standard, a court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness – even if on the low end." Id. at 247 (quoting Corry v. Liberty Life Assur. Co. of Boston, 499 F.3d 389, 398 (5th Cir. 2007)).

In cases where the insurance provider is also the claims administrator, there exists an inherent conflict of interest. See Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 114, 128 S.Ct. 2343, 2349 (2008). However, the Fifth Circuit has joined the majority of other circuits in finding that such a conflict does not change the standard of review. See Holland, 576 F.3d at 248. Rather, the conflict is "but one factor among many that a reviewing judge must take into account." Id. (quoting Glenn, 554 U.S. at 116). A reviewing court may give more weight to such a conflict "where the circumstances surrounding the plan administrator's decision suggest procedural

unreasonableness." <u>Crowell v. CIGNA Group Ins.</u>, 410 F. App'x 788, 793-94 (5th Cir. 2011) (quoting <u>Schexnayder</u>, 600 F.3d at 469). "Procedural unreasonableness" exists when a plan administrator employs an unreasonable method in making the benefits decision. <u>See</u> <u>Davis v. Aetna Life Ins. Co.</u>, 699 F. App'x 287, 293 (5th Cir. 2017).

## II.     Interpretation of the Plan

### A.     Relevant facts

The Plaintiffs contend that MetLife improperly denied Mrs. Beazley's claim for benefits. <u>See</u> Record Document 28. In support thereof, Plaintiffs have provided the Court with a timeline of the relevant factual events. <u>See id.</u> at 3. Mr. Beazley, while employed by STC, was on medical leave from September 2013 through April 2014. <u>See id.</u> [3] On May 6, 2014, Mr. Beazley was separated from his employment with STC due to a reduction in workforce. <u>See id</u>; AAR 124. Plaintiffs state that on the same date, another company hired Mr. Beazley. <u>See</u> Record Document 28 at 3. On May 18, 2014, while traveling on job-related business for his new employer, Mr. Beazley experienced health problems and was admitted to a hospital in Dallas, Texas. <u>See id.</u> On May 30, 2014, Mr. Beazley was released from the hospital and returned home to Breaux Bridge, Louisiana. <u>See id.</u> [4] Mr. Beazley's health deteriorated, and Mrs. Beazley took care of him on a full time basis. <u>See id.</u> In the interim, on May 27, 2014, MetLife

---

[3] The record does not reflect the medical condition that necessitated Mr. Beazley's leave of absence, or what date he returned to work.

[4] The Court notes that Plaintiffs have provided few details regarding Mr. Beazley's health prior to his death and have not alleged that Mr. Beazley's condition rendered him unconscious or mentally incompetent to handle his affairs. The only evidence regarding Mr. Beazley's condition is found in a statement by Donna Latiolais to a MetLife representative that Mr. Beazley was unable to function on his own. <u>See</u> AAR 015.

generated a letter addressed to Mr. Beazley entitled "Notice of Group Life Insurance Portability and Conversion Privileges – Schlumberger." See id.; AAR 029. The letter was postmarked May 29, 2014. See Record Document 28 at 3; AAR 101.[5] The letter contained information regarding Mr. Beazley's option to continue life insurance coverage through porting and/or converting his policy. See AAR 053-074. The letter also included the necessary application forms. See id.

On June 12, 2014, thirteen days after his release from the hospital, and thirty-seven days after his separation from STC, Mr. Beazley died. See Record Document 28 at 3; AAR 007. The next day, Donna Latiolais ("Ms. Latiolais"), a close family friend, contacted MetLife on behalf of Mrs. Beazley. See Record Document 28 at 3; AAR 015. Ms. Latiolais advised MetLife of Mr. Beazley's death, and requested information about his benefits. See id. The administrative record reflects that Ms. Latiolais advised MetLife that Mrs. Beazley received MetLife's letter on or about June 2, 2014, but did not open the mail until June 13, 2014, the day after her husband died. See AAR 015.

Mrs. Beazley filed a claim for benefits with the assistance of an attorney. See AAR 001-010. By letter dated June 2, 2015, MetLife denied the claim. See AAR 079-081. Therein, MetLife noted that Mr. Beazley's coverage ended on May 6, 2014, the date his employment with STC was terminated. See id. MetLife explained that per the

---

[5] Plaintiffs argue that MetLife was unreasonable and dilatory in waiting twenty-three days to mail Mr. Beazley notice of his right to convert or port his coverage. See Record Document 41 at 5. MetLife maintains that it was under no duty to provide any further notice of the right to convert or port than that contained in the Plan. See Record Document 45 at 5-6. The Court was unable to locate Fifth Circuit precedent directly on point. However, other courts have found that ERISA does not mandate additional notice of conversion rights beyond the information contained in the plan. See Howard v. Gleason Corp., 901 F.2d 1154, 1161 (2nd Cir. 1990); Walker v. Fed. Express Corp., 492 F. App'x. 559, 565-66 (6th Cir. 2012); Prouty v. Hartford Life & Acc. Ins. Co., 997 F.Supp.2d 85, 91 (D. Mass. 2014).

terms of the Plan, for coverage to be in place, MetLife must have received a completed conversion application from Mr. Beazley within thirty-one days from the date his coverage ended. See id. Because Mr. Beazley died more than thirty-one days from the date his coverage was terminated, MetLife concluded that no coverage was in effect at the time of his death. See id. The Court notes that MetLife's initial denial did not address the issue of porting coverage.

Mrs. Beazley appealed the decision with the assistance of her attorney. See AAR 107-123. By letter dated September 3, 2015, MetLife upheld its denial of Mrs. Beazley's claim. See AAR 129-132. Therein, MetLife again noted that Mr. Beazley's life insurance coverage ended with the date of his termination, May 6, 2014. See id. MetLife stated: "[t]he extension period provided to Mr. Beazley due to the late written notice of the option to continue his life insurance did not extend the group life insurance itself; it extends the application period only." See id. MetLife concluded that because Mr. Beazley did not submit an application to port his coverage, no coverage was in effect at the time of his death. See id.

### B.      Language of the Plan

The provisions of the Plan relevant to MetLife's denial of Mrs. Beazley's claim are as follows:

**ELIGIBILITY PROVISIONS: INSURANCE FOR YOU**

**DATE YOUR INSURANCE ENDS**

Your[6] insurance will end on the earliest of:

---

[6] The Plan defines the term "You/Your" as follows: "You or Your refers to the employee who is insured under the Group Policy for the insurance described in this certificate." See SPD 036.

9

For all coverages:

1. the date the Group policy ends; or
2. the date insurance ends for Your class; or
3. the end of the period for which the last premium has been paid for You; or
4. the date Your employment ends; Your employment will end if You cease to be Actively at Work in any eligible class, except as stated in the section entitled CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT;

[. . . ]

Please refer to the section entitled LIFE INSURANCE: CONVERSION OPTIONS FOR YOU for information concerning the option to convert to an individual policy of life insurance if Your Life Insurance ends.

In certain cases insurance may be continued as stated in the section entitled CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT.

<u>See</u> SPD 041.

The section entitled "CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT" establishes the terms and conditions for porting coverage. It states in pertinent part:

**CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT […]**

**AT YOUR OPTION: PORTABILITY**

**For Life Insurance**

If Your Portability Eligible Insurance or Portability Eligible Dependent Insurance ends for any of the reasons stated below, You have the option to continue that insurance under another group policy in accordance with the conditions and requirements of this section. This is referred to as Porting. Evidence of Your insurability will not be required.

For purposes of this subsection the term "Portability Eligible Insurance" refers to Your Life Insurance for which the Portability Eligible Insurance is shown as available in the SCHEDULE OF BENEFITS.[7]

[. . .]

**When Porting is an Option**

Porting may only be exercised by a request in Writing during the Request Period specified below.

If you choose not to Port, Life Insurance benefits may be converted in accordance with the section entitled LIFE INSURANCE: CONVERSION OPTION FOR YOU or the section entitled LIFE INSURANCE CONVERSION OPTION FOR YOUR DEPENDENTS.

1.    You may choose to Port if Portability Eligible Insurance and/or Portability Eligible Dependent Insurance ends because:
    *    You became retired from active service with the employer; or
    *    Your employment ends, due to a reason other than retirement; or
    *    You cease to be in a class that is eligible for such insurance;

[. . .]

**Request Period**

For You or a former Dependent to Port, We must receive a completed request form within the Request Period as described below.

If written notice of the option to Port is given within 15 days before or after the date such insurance ends, the Request Period:

*    begins on the date the insurance ends, and
*    expires 31 days after the date.

If written notice of the option to Port is given more than 15 days after but within 91 days of the date such insurance ends, the Request Period:

---

[7] The Court notes that Mr. Beazley had both basic and supplemental life insurance, which the Plan treats differently with regard to porting and/or converting coverage. The Plan states: "Basic Life Insurance is **NOT** Portability Eligible Insurance." <u>See</u> SPD 023. Conversely, the Plan states: "Supplemental Life Insurance is Portability Eligible Insurance." <u>See</u> SPD 024. Thus, Mr. Beazley had the option to port his supplemental coverage into a new group policy. Mr. Beazley's basic life insurance was only eligible for conversion into a new individual policy.

> \*      begins on the date the insurance ends, and
> \*      expires 45 days after the date of the notice.
>
> If written notice of the option to Port is not given within 91 days of the date such insurance ends, the Request Period:
>
> \*      begins on the date the insurance ends, and
> \*      expires at the end of such 91 day period.

<u>See</u> SPD 046-048.

The Plan also provides for the option to convert non-portability eligible portions of

coverage (<u>i.e.</u>, basic life insurance) into a new individual policy, as follows:

> **Right to Convert Life Insurance Amounts Not Ported**
>
> Any amount of Life Insurance not Ported under this subsection may be converted under the section entitled LIFE INSURANCE: CONVERSION OPTION FOR YOU or the section entitled LIFE INSURANCE: CONVERSION OPTION FOR YOUR DEPENDENTS.

<u>See</u> SPD 049.

The terms and conditions for exercising the conversion option in the Plan are set

forth as follows:

> **LIFE INSURANCE: CONVERSION OPTION FOR YOU**
>
> If Your life insurance ends or is reduced for any of the reasons stated below, You have the option to buy an individual policy of life insurance ("new policy") from Us during the Application Period in accordance with the conditions and requirements of this section.  This is referred to as the "option to convert".  Evidence of Your insurability will not be required.
>
> **When You Will Have the Option to Convert**
>
> You will have the option to convert when:
>
> A.      Your life insurance ends because:
> > \*      You cease to be in an eligible class;
> > \*      Your employment ends
>
> [. . .]

**Application Period**

If You opt to convert Your Life Insurance for any of the reasons stated above, We must receive a completed conversion application form from You within 31 days after the date Your Life Insurance ends or is reduced.

**Option Conditions**

The option to convert is subject to the following:

A.      Our receipt within the Application Period of:
      *        Your Written application for the new policy; and
      *        the premium due for such new policy;

[. . .].

<u>See</u> SPD 058.

The Plan also contains two clauses that address death within thirty-one days of the date insurance ended. The clauses provide a thirty-one day grace period during which benefits may be available if death occurs before applying to port or convert coverage. The provision related to porting coverage is as follows:

**If You Die Within 31 Days of the Date Portability Eligible Life Insurance Ends**

If You die within 31 days of the date Portability Eligible Life Insurance ends and an application to Port is not received by Us during such period, We will determine whether Your life insurance qualifies for payment. This determination will be made in accordance with the section entitled LIFE INSURANCE: CONVERSION OPTION FOR YOU.

<u>See</u> SPD 049. The provision related to conversion is as follows:

**If You Die Within 31 Days After Your Life Insurance Ends Or Is Reduced**

If You die within 31 days after Your life insurance ends or is reduced by an amount You are entitled to convert, Proof of death must be sent to Us. When We receive such Proof with the claim, We will review the claim and if We approve it will pay the Beneficiary. The amount We will pay is the amount You were entitled to convert. […].

13

<u>See</u> SPD 059.

### C. Whether MetLife Abused Its Discretion Interpreting the Plan

The Fifth Circuit utilizes a "two-step methodology for testing the plan administrator's interpretation of the plan for abuse of discretion." <u>Tolson v. Avondale Indus., Inc.</u>, 141 F.3d 604, 608 (5th Cir. 1998) (citation omitted). First, the Court "must determine the legally correct interpretation of the plan." <u>Id.</u> Second, "[o]nly if the court determines that the administrator did not give the legally correct interpretation, must the court then determine whether the administrator's decision was an abuse of discretion." <u>Id.</u>[8]

To determine whether MetLife's interpretation was legally correct, this Court must consider: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." <u>LifeCare Mgmt. Serv. LLC v. Ins. Mgmt. Adm'rs Inc.</u>, 703 F.3d 835, 841 (5th Cir. 2013) (quotation omitted). The most important factor of the three is "whether the administrator's

---

[8] This Court is mindful of <u>Ketchum v. Saint-Gobain Corp.</u>, 18-0562, 2019 WL 3311204 (W.D. La. July 22, 2019), wherein the court found that the insurer abused its discretion in denying disability benefits to the insured. In <u>Ketchum</u> there was no dispute that the insured qualified for disability benefits under a clause of the plan. Rather, the dispute centered on whether the insured was eligible to receive retroactive benefits back to the date of his disability when another clause of the plan limited payment of retroactive benefits to ninety days prior to the receipt of an application for the benefits. The court found that the ninety-day limitation created an ambiguity between two clauses in the plan, and that it was an abuse of discretion to deny the insured payment of benefits to which he was eligible under one of the clauses. <u>See id.</u> at *9. The facts are distinctive from this matter. Mrs. Beazley is not eligible to receive benefits because the terms of the Plan are clear that Mr. Beazley's life insurance ended with his date of separation. Coverage under a new group or individual policy was contingent on the receipt of the necessary paperwork completed by Mr. Beazley, which did not occur.

interpretation is consistent with a fair reading of the plan." Gosselink v. Am. Tel. & Tel., Inc., 272 F.3d 722, 727 (5th Cir. 2001). "An administrator's interpretation is consistent with a fair reading of the plan if it construes the plan according to the plain meaning of the plan language." LifeCare, 703 F.3d at 841 (citation omitted).

If the administrator's interpretation of the plan is legally incorrect, the Court must move to the second step and determine whether the interpretation is an abuse of discretion. Id. The Fifth Circuit has stated:

> A plan administrator abuses its discretion without some concrete evidence in the administrative record that supports the denial of the claim. Abuse of discretion factors include: (1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith. However, if an administrator interprets an ERISA plan in a manner that directly contradicts the plain meaning of the plan language, the administrator has abused his discretion even if there is neither evidence of bad faith nor a violation of any relevant administrative regulations.

See id. (internal citations and quotations omitted).

MetLife made several interpretations of the Plan, which the Court will examine for legal correctness. The only relevant factor based on the record before the Court is whether MetLife's interpretations are consistent with a fair reading of the Plan language based on the plain meaning of the language incorporated therein. See id.

As noted above, MetLife interpreted the Plan's "Date Your Insurance Ends" clause to conclude that Mr. Beazley's life insurance coverage terminated May 6, 2014, the date his employment with STC was terminated. See AAR 079-081. The terms of the Plan are unambiguous that an employee's group life insurance coverage is terminated *on the earliest* of several events, including the end of the employment relationship. See SPD 041 (emphasis added). In this case, the earliest event was Mr.

Beazley's termination from STC on May 6, 2014. The Fifth Circuit recently affirmed the dismissal of an ERISA case where a strikingly similar "Date Your Employment Ends" clause was interpreted by MetLife to conclude that insurance ended on the date the employee was terminated. See Briscoe v. Metropolitan Life Ins. Co., 671 F. App'x 355 (5th Cir. 2016). The Court finds no error with MetLife's interpretation regarding the date Mr. Beazley's insurance ended.

MetLife also interpreted the Plan to find that any extension in Mr. Beazley's application period to port his coverage due to the late mailing of the "Notice of Portability and Conversion Privileges" only extended the deadline to apply, not the life insurance itself. See AAR 131. Because MetLife did not receive an application from Mr. Beazley to convert or port his coverage prior to his death, and Mr. Beazley died more than thirty-one days after his coverage ended, MetLife concluded that no coverage was in place and no benefits were due. See id. The Court will examine MetLife's legal conclusion regarding the lack of coverage under the conversion or porting provisions in turn.

With regard to conversion, the Court finds that the Plan clearly states that an application to convert must be received by MetLife within thirty-one days after the date coverage ended. See SPD 058. Per the terms of the Plan, Mr. Beazley's conversion application period expired prior to his death on June 6, 2014. However, the Court notes a conflict with the language of the Plan and the "Notice of Group Life Insurance Conversion Privilege" mailed to Mr. Beazley, which states in relevant part:

> Generally, you have 31 days from the date group coverage ends to apply for conversion. However, if this Notice is dated more than 15 days from date of termination, your application period is extended for an additional 15 days. If the 15-day extension applies to you, it will not exceed more than 91 days from the date group insurance was terminated.

<u>See</u> AAR 047.[9]   The notice is dated May 27, 2014, more than 15 days after Mr. Beazley's termination.  <u>See</u> AAR 029.  If applied, the 15-day extension would place Mr. Beazley's death during the application period to convert.

Nevertheless, even if the Court resolves the conflicting language to extend the conversion application deadline, the result does not change under the terms of the Plan. The Plan unambiguously states that conversion is subject to several conditions, including both the receipt of an application and payment of the premium.  <u>See</u> SPD 058. It is undisputed that Mr. Beazley never sent a conversion application or premium payment to MetLife.  Indeed, the evidence indicates that MetLife's notice letter and conversion application remained unopened until after Mr. Beazley's death.  <u>See</u> AAR 015.  Conversion to an individual policy does not occur without the affirmative action of the insured to submit an application and pay the premium during the application period. <u>See</u> <u>Robin v. Metropolitan Life Ins. Co.</u>, 147 F.3d 440 (5th Cir. 1998) (widow's claim for benefits properly denied when husband died more than 31 days after his employment ended without submitting an application for conversion or associated premium).

Moreover, the Plan states: "Application Period: If You opt to convert Your Life Insurance [. . .]  We must receive a completed conversion application form from You within 31 days after the date Your life Insurance ends or is reduced."  <u>See</u> SPD 058. "You" and "Your" are defined by the Plan as "an employee who is insured under the

---

[9]   The Plan also states under the section entitled "Option Conditions" that "the new policy will take effect on the 32nd day after the date Your life insurance ends or is reduced; *this will be the case regardless of the duration of the Application Period.*"  <u>See</u> SPD 058 (emphasis added).  This phrase suggests to the Court that the application period is capable of being extended as noted on the application, otherwise the phrase is unnecessary.

Group Policy for the insurance described in this certificate." <u>See</u> SPD 036. Thus, under the terms of the Plan, only Mr. Beazley could have properly completed the application to convert.[10] <u>See</u> <u>Dontas v. Metropolitan Life Ins. Co.</u>, No. 91-503, 1993 WL 99189, at *13 (E.D. La. March 31, 1993) (right to convert personal to the insured).

It is also clear that Mr. Beazley died more than thirty-one days after his coverage terminated, which prevents application of the "If You Die Within 31 Days After Your Life Insurance Ends Or Is Reduced" clause found in the section of the Plan related to conversion. <u>See</u> SPD 059. The clause provides a benefit during a thirty-one day grace period following the end of insurance coverage. <u>See id.</u> The clause contains a hard deadline of thirty-one days, and does not contain any language that would extend coverage beyond thirty-one days based on late notification of conversion rights.[11] Accordingly, because Mr. Beazley's coverage had already terminated on May 6, 2014, and he died more than thirty-one days later without submitting an application to convert or the associated premium, the Court finds no error in MetLife's determination that no coverage existed via conversion.

---

[10]  The Court notes that the record does not contain any evidence to suggest that Mrs. Beazley had power of attorney to act on her husband's behalf before his death.

[11]  Compare with <u>Tonguette v. Sun Life & Health Ins. Co.</u>, 595 F. App'x 545 (6th Cir. 2014), wherein the Sixth Circuit held in favor of a widow to award benefits under a clause entitled "Death within Conversion Period" after her husband died beyond thirty-one days, but within the conversion application period due to no notice. The clause in question was found to be ambiguous. <u>Id.</u> at 546-48. In this case, the clause is entitled "If You Die Within 31 Days After Your Life Insurance Ends or is Reduced." <u>See</u> SPD 059. The title makes it clear that the thirty-one days are counted from the date insurance ends. Additionally, the Plan provides MetLife with discretion to interpret the Plan, which includes the power to resolve ambiguities. <u>See</u> SPD 084; <u>McCorkle v. Metropolitan Life Ins. Co.</u>, 757 F.3d 452, 459 (5th Cir. 2014) (citation omitted).

The Court now turns to Mr. Beazley's coverage that could have been ported. Plaintiffs argue that because Mr. Beazley died during the extended time period to submit an application to port his coverage, MetLife acted unreasonably by failing to advise Ms. Latiolais that Mr. Beazley's family members could submit an application to port his policy post mortem. See Record Document 36 at 2-3.[12] Plaintiffs suggest that it is "fundamentally unfair that MetLife be rewarded for failing to properly advise the Beazley family of their rights and options regarding benefits during the conversion or portability period." Record Document 36 at 2. Jared Beazley argues that if MetLife had disclosed to Ms. Latiolais that the Beazley family had a deadline to apply for over a million dollars in life insurance benefits, this would have "caused them to fill out the proper forms to port the policy." Record Document 31 at 6.

For reasons similar to those discussed above regarding conversion, the Court cannot agree with Plaintiffs' arguments. All parties agree that due to the late notice provided, the application period for Mr. Beazley to port his coverage was extended to forty-five days. See Record Document 28 at 9; Record Document 34 at 20; Record

---

[12] Although all parties have stipulated that ERISA governs this case, Plaintiffs request that the Court take into consideration La. Rev. Stat. 22:942(12), arguing that Louisiana law would require MetLife to provide coverage because Mr. Beazley died during the application period to port his coverage. See Record Document 28 at 10 (citing La. Rev. Stat. 22:942(12)). ERISA was enacted by Congress to be a comprehensive legislative scheme, including a system for enforcement. See Aetna Health Inc. v. Davila, 542 U.S. 200, 208, 124 S.Ct. 2488, 2495 (2004). As such, "any state-law remedy that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." Id. at 209. Thus, all claims related to improper processing of benefit claims are precluded. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 57, 107 S.Ct. 1549, 1558 (1987); see also Swenson v. Eldorado Casino Shreveport Joint Venture, No. 15-2042, 2016 WL 1084279, at *4 (W.D. La. Jan. 6, 2016). Plaintiffs' claims are preempted by ERISA because they concern the denial of a claim for benefits. Accordingly, the Court may not consider La. Rev. Stat. 22:942(12) in its analysis of Plaintiffs' claims.

Document 31 at 5. However, to port coverage the Plan requires receipt of a written request form. See SPD 046. Like the language regarding conversion, the Plan also states: "You may choose to Port if Portability Eligible Insurance […] ends because […] Your employment ends, due to a reason other than retirement." SPD 046.[13] The Plan's use of the defined term "You/Your" indicates that only Mr. Beazley could submit a written request to port his coverage. The record is clear that Mr. Beazley never submitted a written request to port his coverage prior to his death. The MetLife packet containing the proper form to port coverage was not opened prior to his death. See AAR 015.

Plaintiffs have not offered the Court caselaw to support their argument that a family member, after Mr. Beazley died, had the legal capacity or right to port Mr. Beazley's coverage. Because Mr. Beazley's coverage terminated at the end of his employment, and Mr. Beazley did not submit an application to port his coverage, the Court cannot find a legal error in MetLife's interpretation of the Plan that no coverage existed through the option to port. Additionally, the Court finds that MetLife did not act unreasonably in its interactions with Ms. Latiolais because the Plan does not provide that a family member may submit an application to port on behalf of an insured either before or after their death.

---

[13] The Plan also states: "[f]or You or a former Dependent to Port, We must receive a completed request form within the Request Period […]." See SPD 047. The use of the phrase "or a former Dependent to Port" when examined in context with the complete section refers to a former spouse resulting from death or divorce from the main policyholder, or a child of the main policyholder who ages out of coverage or marries. See SPD 034-035. Former dependent spouses and former dependent children are eligible to port their own coverage. See SPD 047.

The only possible avenue for payment of portability eligible benefits after Mr. Beazley's death without the submission of the required application would be from the clause in the Plan entitled "If You Die Within 31 Days of the Date Portability Eligible Life Insurance Ends." <u>See</u> SPD 049. However, because Mr. Beazley died thirty-seven days after his coverage ended, the clause is inapplicable. The clause does not contain language that would extend the payment of benefits beyond thirty-one days based on late notification of eligibility to port. <u>See id.</u>

Plaintiffs also argue that benefits should be paid because the Plan is silent with regard to the consequences of an insured dying within the extended time frame (<u>i.e.</u>, more than 31 days) to port coverage. <u>See</u> Record Document 41 at 4-5. Plaintiffs are correct that the Plan does not contain a dedicated clause that speaks directly to the consequences of a formerly insured dying during the extended time frame to port coverage. The Court agrees, in theory, that the Plan should clearly explain the effect of dying within the extended application period to port without the need to reference multiple sections of the Plan. This would reduce unnecessary confusion for participants and beneficiaries. However, MetLife's denial is supported under the terms of the Plan as it is written. Coverage ended on the date Mr. Beazley was terminated, an application to port was not submitted prior to his death, and he died outside of the thirty-one day grace period during which coverage would have been provided without an application.

The Court understands that this result is disappointing for the Beazley family, but the terms of the Plan are clear. The Court can find no legal error in MetLife's interpretation of the Plan's terms to deny payment of benefits to Mrs. Beazley. Accordingly, MetLife's interpretation of the Plan was not an abuse of discretion.

### III.     Beneficiaries of the Policy

As noted herein, Jared Beazley made a claim that he is also a proper beneficiary under Mr. Beazley's basic and supplemental policies. <u>See</u> Record Document 24. Because this Court has determined that MetLife did not abuse its discretion in denying Mrs. Beazley's claim for benefits, the Court need not determine whether Jared Beazley would have been considered a proper beneficiary under the basic or supplemental policy.

### CONCLUSION

For the reasons assigned above, all claims are hereby **DISMISSED WITH PREJUDICE**.  A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 20th day of August, 2019.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT